UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:04CV-69-R

ANTHONY LEE HILLS                                                                                    PLAINTIFF

v.

COMMONWEALTH OF KENTUCKY, ET AL.                                             DEFENDANTS

### MEMORANDUM OPINION

This matter is before the Court on Defendants' Motion for Summary Judgment (Dkt. # 42). Plaintiff has not responded. The time for response has passed and this matter is now ripe for adjudication. For the reasons that follow, the Motion for Summary Judgment is **GRANTED in part and DENIED in part**.

### BACKGROUND

Pursuant to 28 U.S.C. § 1915(e) and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), this Court screened Mr. Hills's complaint. All of the claims were dismissed except for a Fourteenth Amendment claim against Defendants Simon, Siddiqui, and Allen in their individual capacities. premised on the forced administration of medication. The following facts are taken from the Court's previous opinion on June 16, 2004:

> Hills claims that on April 12, 2003, unidentified officers from the Warren County Sheriff's Department attempted to question him concerning an assault on Patricia Barton, who is a Warren County deputy jailer. Hills claims he invoked his Fifth Amendment right to remain silent and was thereafter arrested [and] taken to jail. He claims that he was unjustly prosecuted due to Barton's position as deputy jailer.
>
> On April 14, 2003, Hills appeared in court regarding what appears to be the criminal charge involving Barton. Defendant Judge Potter refused to release Hills in order "to give the prosecution time to gather evidence against" Hills (DN 2, Statement, p.1).
>
> ...While incarcerated at the WCJ, Hills notes that he was seen by a psychologist.

1

> Thereafter, he was transferred to KCPC for further evaluation. After approximately 30 days at KCPC, Hills met with Dr. Simon, who informed Hills that if he cooperated that he would be returned to the WCJ. Dr. Simon thereafter conferred with Dr. Allen, and both agreed that Hills needed medication and in particular forced medication. Dr. Simon and Dr. Siddiqui denied Hills' request to return to the WCJ so that he could face the pending charges. Rather, they commenced a regimen of forced medical treatment. When Hills experienced side effects from the medication, Dr. Siddiqui continued the treatment notwithstanding.

(Dkt. # 5).

The Defendants claim that Mr. Hills was charged with Burglary, First Degree, under Ky. Rev. Stat. § 511:020, a Class B Felony because he "forced his way into a residence injuring a female in the process." The Warren County District Court ordered that Kentucky Correctional Psychiatric Center's ("KCPC") staff to conduct a competency examination. Dr. Robert Sivley, Jr. conducted tests and found that Mr. Hills has some delusions about the alleged victim and her son and that Mr. Hills should be observed over a longer term. On June 10, 2003, the Warren County District Court ordered Mr. Hills to be transported to KCPC "for treatment and examination, including forced medication and any restraint which may be necessary..."

On August 13, 2003, Dr. Simon discussed Mr. Hills's condition with Ms. Gibson, a court-appointed Public Defender, and she agreed that Mr. Hills should undergo a trial of psychotropic medication (Dkt. # 44). At that time, Mr. Hills's record showed that he had been sent to "cool-down" for threatening and cursing staff and failing to "re-direct" when asked by staff (Id.). On August 14, 2003, he stated that "[i]f they force me to take medication, I'll get violent" (Id.). He said that "he would fight the corrections officers and break a few arms and legs" (Id.). Dr. Simon sent a follow-up letter to Ms. Gibson stating that she had agreed to a trial of psychotropic medication and would relay this to the Court. Mr. Hills forced medication was discontinued after about 3 ½ weeks. He was released from KCPC sometime around September 29, 2003 (Dkt. # 44, Tab 5).

**STANDARD**

A movant is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Facts are "material" in a summary judgment inquiry only when they could affect the case's outcome under the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Stated differently, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id*. Furthermore, an issue of material fact is "genuine" only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252. Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, Ky., 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

**DISCUSSION**

Defendants argue that they are entitled to qualified immunity on Mr. Hills's claim of being forcibly medicated in violation of the Fourteenth Amendment Due Process clause. In a qualified immunity analysis this court must make a three-step determination: "(i) 'whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred;' (ii) 'whether the violation involved a clearly established

3

constitutional right of which a reasonable person would have known;' and (iii) 'whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'" *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 302 (6th Cir. 2005).

First, this court must determine by viewing the facts in favor of Mr. Hills whether he has alleged a constitutional violation. Mr. Hills alleges that he was forcibly medicated in violation of his Fourteenth Amendment due process rights. The Fourteenth Amendment protects pre-trial detainees from being forced to take antipsychotic drugs "absent a finding of overriding justification and a determination of medical appropriateness." *Riggins v. Nevada*, 504 U.S. 127, 135 (1992). The Supreme Court has also held that "the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Washington v. Harper*, 494 U.S. 210, 227 (1990). Mr. Hills is not alleging that Kentucky's procedural for determining whether he should be forcibly medicated is unconstitutional but instead is challenging whether the proper procedure was followed in his case. State law requires a hearing before an involuntary patient like Mr. Hills can be forcibly medicated:

> (2) Upon the refusal of an involuntary patient to participate in any or all aspects of his treatment plan, the review committee shall examine the appropriateness of the patient's individual treatment plan. Within three (3) days of the refusal, the review committee shall meet with the patient and his counsel or other representative to discuss its recommendations.
>
> (3) If the patient still refuses to participate in any or all aspects of his individual treatment plan, the hospital may petition the District Court for a de novo determination of the appropriateness of the proposed treatment. Within seven (7) days, the court shall conduct a hearing, consistent with the patient's rights to due process of law, and shall utilize the following factors in reaching its determination:

4

>  (a) Whether the treatment is necessary to protect the patient or others from harm;
> (b) Whether the patient is incapable of giving informed consent to the proposed treatment;
> (c) Whether any less restrictive alternative treatment exists; and
> (d) Whether the proposed treatment carries any risk of permanent side effects.
>
> (4) Upon the completion of the hearing, the court shall enter an appropriate judgment.

Ky. Rev. Stat. § 202A.196(2)-(4).

Defendants argue that Mr. Hills was forcibly medicated in an emergency situation because of Mr. Hills's "behavior." Therefore, they argue a hearing is not required under 908 Ky. Admin. Regs. 3:010 § 1(3)(a). "Behavior" that justifies forcibly medicating someone in an emergency situation has been described in the following statute:

> (3) "Emergency situation" means the presence of a situation in which a patient's behavior in his present environment is such that it presents an immediate and substantial danger or threat of immediate or substantial danger to that person or to others.
> (a) Behavior included in this definition extends to verbal threats or abuse toward other patients which creates a substantial risk that other patients may react in a manner which poses an immediate substantial danger or threat of immediate substantial danger to themselves or others, or which will interfere in a substantial manner with the realistic opportunity of other patients to improve their own level of functioning through care and treatments in a hospital or residential treatment center;

908 Ky. Admin. Regs. 3:010 § 1(3)(a). The staff at KCPC only documented one incident where Mr. Hills's behavior was directed at other patients not staff–August 5: "Patient calling peer names and making fun of him. Patient would not re-direct. Patient sent to 'cool-down' for 30 minutes." This record really does not give the Court enough information to determine the severity of the incident. Later, when discussing whether Mr. Hills was dangerous in a letter dated September 29, 2003, Dr. Simon does not mention any violence against other patients but instead mentions only verbal threats against the KCPC staff. Therefore, Dr. Simon does not appear to believe Mr. Hills was a threat to

other patients.

The Kentucky regulations set forth what the staff may do in an emergency situation and the patient's right to refuse treatment:

> Section 4. Right to Refuse Treatment. (1) Patients may, under certain conditions, refuse treatment offered to them by the hospital. The refusal shall be clearly documented in the medical records.
>
> (a) All patients, whether admitted voluntarily, or committed on an involuntary basis as the result of a hearing held pursuant to KRS Chapter 202A or 202B, have the right to refuse treatment. A patient who refuses treatment may be forcibly treated only pursuant to a court order after a de novo review as set forth in KRS 202A.196.
>
> (b) If no court findings exist to support the implementation of a specific treatment plan which is unacceptable to the patient, the treatment may be implemented or continued only in an emergency situation documented in the medical records of the patient. The hospital or residential treatment center shall seek to develop an alternative plan of treatment acceptable to both the hospital or residential treatment center and the patient or secure a court order sanctioning forced treatment. If the hospital or residential treatment center and a voluntarily admitted patient cannot agree on an acceptable alternative plan of treatment, the hospital or residential treatment center may discharge the patient or pursue other remedies under law as may be necessary. If the hospital or residential treatment center prior to obtaining a judicial order for forced treatment determines that an emergency exists and that the patient presents an immediate and substantial danger or threat of immediate and substantial danger to self or others, the hospital or residential treatment center may intervene in the least intrusive manner possible while simultaneously seeking a de novo review.

908 Ky. Admin. Regs. 3:010 § 4.  It does not appear that the staff treated Mr. Hills on an emergency basis because the staff did not simultaneously seek a de novo review of whether Mr. Hills should be medicated as required.

The hearing on June 10, 2003 while authorizing forced medication does not have the findings necessary under Ky. Rev. Stat. § 202A.196(3):

> (3) If the patient still refuses to participate in any or all aspects of his individual treatment plan, the hospital may petition the District Court for a de novo

> determination of the appropriateness of the proposed treatment. Within seven (7) days, the court shall conduct a hearing, consistent with the patient's rights to due process of law, and shall utilize the following factors in reaching its determination:
> (a) Whether the treatment is necessary to protect the patient or others from harm;
> (b) Whether the patient is incapable of giving informed consent to the proposed treatment;
> (c) Whether any less restrictive alternative treatment exists; and
> (d) Whether the proposed treatment carries any risk of permanent side effects.

KRS § 202A.196. Further, there is no evidence that a physician recommended any course of medical treatment including forced medication at the hearing. *See Turner v. Commonwealth*, 860 S.W.2d 772, 774 (Ky. 1993). From this, the court concludes that Mr. Hills did not have a proper hearing and the information justifying an emergency treatment situation is weak at best. Therefore, the Court will continue analyzing the Defendants' qualified immunity defense to determine whether the Defendants' actions were reasonable in light of the clearly established law.

Defendants argue that Mr. Hills's counsel agreed that they could give him medication and Mr. Hills is bound by her action. *See Copeland v. Commonwealth*, 415 S.W.2d 842, 843 (Ky. 1967). That court stated: "nothing but chaos could result if the courts were to hold that a person is not bound by his lawyer's decisions on matters affecting his legal rights unless the person himself fully knew and comprehended those rights." *Id.* That case involved an attorney's failure to present the legal argument that his client was convicted without counsel in violation of Kentucky law. *Id.* Failure to present a legal argument, which the client does not know exists, is a clearly distinguishable from the situation here where Mr. Hills's counsel agreed to forcibly medicate him against his will.

Clearly, Dr. Simon did not rely on the court order on June 10, 2003 to medicate Mr. Hills because on August 13, 2003, he called Mr. Hills's attorney Ms. Gibson to ask whether Mr. Hills

could be medicated against his will. On August 14, 2003, Dr. Simon sent Ms. Gibson a letter summarizing the conversation that they had the day before where she had agreed to medicate Mr. Hills and would relay this information to the court (Dkt. # 44, Tab 4). Additionally, the letter also stated that Mr. Hills had refused to consent to be medicated. Under Ky. Rev. Stat. § 202A.196(2), upon Mr. Hills's refusal, the Defendants are required to meet with the patient and his counsel. When the Defendants in this case talked with Ms. Gibson, she agreed that they could treat Mr. Hills, but Mr. Hills still refused. Under Ky. Rev. Stat. § 202A.196, if, after meeting with the patient and counsel, the patient still refuses, a hearing must be held within seven (7) days to determine if the patient can be forcibly medicated. Without having a proper hearing, Dr. Siddiqui prescribed medication for Mr. Hills. Under the clearly established Kentucky law setting forth Mr. Hills's due process rights governing administration of medication by force, it is unreasonable for Dr. Siddiqui to believe that his actions were lawful. Therefore, Dr. Siddiqui is not entitled to qualified immunity at this point in the litigation.

    Dr. Siddiqui is the psychiatrist who prescribed the medication for Mr. Hills. Dr. Siddiqui is the only defendant that can be held responsible for the decision to medicate because Drs. Simon and Allen are both licensed psychologists and are not allowed to prescribe medication. Therefore, Dr. Simon and Dr. Allen are dismissed from this action.

## CONCLUSION

The Defendants' Motion for Summary Judgment (Dkt. # 42) is **GRANTED in part and DENIED in part**. Defendants Simon and Allen are dismissed from this action.


cc:     Mr. Anthony Hills, *pro se*
        Counsel